**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BEVERLY D.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 22-CV-338-MTS |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Beverly D. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On August 24, 2020, Plaintiff filed an application for Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.* (R. 11, 281–84). On September 1, 2020, Plaintiff filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA. (R. 297–305). She alleged an inability to work beginning on August 21, 2020, due to limitations resulting from osteoarthritis and hip replacements, in addition to conditions impacting her back and memory. (R. 331). Plaintiff was fifty-five years old at the time of the ALJ's decision. (R. 8, 281). She has a high school education, two years of college, and past relevant work as a resident care aide. (R. 25, 332).

Plaintiff's applications were denied both initially and upon reconsideration. (R. 11, 117–77). At Plaintiff's request, ALJ Deborah M. Giesen conducted an administrative hearing on

December 22, 2021. (R. 11, 53–97). The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 11, 229–42, 266–67). ALJ Giesen issued a decision on January 18, 2022, denying benefits and finding Plaintiff not disabled. (R. 8–28). Plaintiff sought review by the Appeals Council, which was denied on July 5, 2022. (R. 1–7). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since August 21, 2020. (R. 14). At step two, she found Plaintiff suffered from severe impairments of status post bilateral total hip arthroplasty for degenerative joint disease, obesity, degenerative disc disease of the lumbar spine, and degenerative disc disease of the cervical spine. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 18). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." (R. 19).

At step four, the ALJ determined Plaintiff was able to perform her past relevant work as a resident care aide. (R. 25). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of mailroom clerk, information clerk, office helper, rental clerk, counter clerk, and usher, all of which she found existed in significant numbers in the national economy. (R. 27). As a result, the ALJ found Plaintiff had not been under a disability from August 21, 2020, through the date of the decision. *Id.*

**Errors Alleged for Review**

Plaintiff makes one main argument in her challenge to the Commissioner's denial of benefits on appeal that "[t]he ALJ erred in forming the RFC by failing to properly evaluate [Plaintiff's] allegations of disability, the medical evidence, and medical opinion evidence." (Docket No. 13 at 2). In response, the Commissioner asserts the ALJ properly evaluated the evidence, and the decision is supported by substantial evidence. (*See* Docket No. 21).

**The ALJ's RFC Determination**

Plaintiff argues the ALJ erred in determining the RFC because she did not "properly account for [Plaintiff's] standing/walking difficulties." (Docket No. 13 at 3). The ALJ allegedly failed to properly account for Plaintiff's difficulties by ignoring and/or disregarding evidence supporting Plaintiff's testimony of an unsteady and antalgic gait. (*See* Docket No. 13).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. She must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the

regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

### A. Plaintiff's Testimony

The ALJ began her RFC discussion by mentioning Plaintiff's testimony as to her limited capacity to sit, stand, and walk for more than ten minutes at a time. (R. 19). She continued, noting Plaintiff's reports of a limp since 2018 and Plaintiff's difficulties in walking without dizziness and/or falling. *Id.* The ALJ then discussed Plaintiff's testimony "that she drives daily, including to the grocery store and twice a week to physical therapy," concluding Plaintiff "was able to engage in some activities of daily living." (R. 20). She also noted the evidence of record demonstrated Plaintiff's postoperative improvement following her total hip arthroplasty; her improvement with physical therapy; and the partial relief of hip pain following at least four steroid injections. *Id.* (referencing R. 958, 1126–32, 1383).

Moreover, the ALJ acknowledged Plaintiff's report of the exacerbation of her symptoms after being in a motor vehicle accident in January 2021. (R. 21–24). However, Plaintiff's medical examination in February 2021 was unremarkable. (R. 22; *see* R. 1165). Additionally, the results of a consultative examination done in April 2021 reported Plaintiff moved with a slow, but stable gait despite her limp and she did not use an assistive ambulatory device. *Id.* According to Plaintiff's medical records, she "ambulated with a slow and steady gait and was able to heel walk, toe walk, and tandem walk" by May 2021. (R. 22; *see* R. 1216). The ALJ did, however, note that Plaintiff had "limited mobility of the lumbar spine, noted on flexion extension, rotation, and lateral bending" at the same May 2021 examination. (R. 22). Ultimately, the ALJ determined Plaintiff's

subjective complaints were not supported by the evidence of record and that "the totality of the facts and circumstances . . . made it difficult to rely heavily on [Plaintiff's] subjective complaints." (R. 20).

Although the ALJ did not address each piece of evidence substantiating Plaintiff's antalgic gait, Plaintiff's characterization of ignorance and disregard by the ALJ is inaccurate. (*See* Docket No. 13 at 6; *see also Terwilliger v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 614, 623 (10th Cir. 2020) (citing *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014)). The ALJ mentioned and addressed Plaintiff's reports of a limp multiple times throughout her discussion and acknowledged that evidence of record notes Plaintiff ambulating with a limp, or, in other words, walking with an unsteady or antalgic gait. (*See* R. 19, 22–24) ("[Plaintiff] testified that she is 'kind of wobbly' when she walks and must hang onto grandson or something else, but physical examinations have routinely shown that she has a slow and steady gait."). Further, the ALJ imposed additional limitations on Plaintiff's RFC to perform light work, in contrast to the state agency consultants, suggesting consideration of Plaintiff's limitations. (*Compare* R. 19 *with* R. 98–181).

**B. The ALJ's Consideration of Nick Lee Carroll, D.O.'s Opinion**

Plaintiff also argues the ALJ repeated the errors discussed above in her assessment of Plaintiff's treatment records produced by Nick Lee Carroll, D.O. (Docket No. 13 at 7–9). For the same reasons as outlined above, the Court finds Plaintiff's argument as to the sufficiency of the ALJ's evaluation of Dr. Carroll's records to be unavailing.

Additionally, Plaintiff claims the ALJ did not address an alleged inconsistency in Dr. Carroll's records. (Docket No. 13 at 8). The alleged inconsistency is Dr. Carroll's assessment of Plaintiff's gait as "stable with normal speed and stability," while simultaneously noting Plaintiff walked with a limp. *Id.* (quoting R. 1177). The Court is not persuaded by Plaintiff's conclusory

7

assertion that having a limp is inconsistent with also being able to move with a stable gait. Although Dr. Carroll noted that Plaintiff had a left leg limp, Plaintiff has not presented the Court with sufficient evidence showing that it is impossible to have a situation in which an individual may move slowly, in a stable manner, despite a limp. Thus, there was no material inconsistency to be explained by the ALJ.

### C. Plaintiff's Leg Length Discrepancy

Lastly, Plaintiff argues the ALJ improperly dismissed evidence of Plaintiff's varied leg lengths. (Docket No. 13 at 8). The ALJ concluded "[t]here is no mention of a leg length discrepancy in the medical evidence and certainly not a two-inch discrepancy . . . ." (R. 23). However, Lance A. Hoose, D.C., recorded a leg length discrepancy on April 30, 2018, and May 27, 2018. (R. 443, 451). Further, Ryan E. Gursky, D.O., noted a "near equalization of leg lengths" following Plaintiff's right hip total arthroplasty on October 24, 2018, and a "near equalization of leg lengths" following Plaintiff's left hip total arthroplasty on October 5, 2020. (R. 873, 1075). There is clearly *some* documentation of a leg length discrepancy.

Although the ALJ incorrectly asserted in her decision that there is no mention of a leg length discrepancy in the medical evidence, she did mention and acknowledge the existence of Plaintiff's limp, as already discussed. The Court disagrees with Plaintiff's assertion that this error "resulted in the ALJ improperly rejecting Plaintiff's testimony regarding additional reasons that accounted for her reduced capacity to stand and walk." (Docket No. 13 at 8–9). The ALJ discussed the impact of the recorded limp on Plaintiff's walk, concluding that Plaintiff retained the ability to move with a slow and steady gait. There is evidence of record stating that Plaintiff's gait was slow and steady, regardless of the presence of a leg length discrepancy or limp. *See Robert E. M. v. Saul*, No. 19-CV-2-CVE-JFJ, 2020 WL 6128229, at *4 (N.D. Okla. July 7, 2020), *report and*

*recommendation adopted*, 2020 WL 4437465 (N.D. Okla. Aug. 3, 2020) ("Although the ALJ could have written a more thorough decision and offered further explanation of certain records, the undersigned finds the discussion adequate to demonstrate that the ALJ followed correct legal standards."). Thus, the Court does not find the inaccuracy of the ALJ's statement regarding Plaintiff's leg length discrepancy to constitute reversable error.

### The ALJ's Consideration of the Medical Opinion Evidence

Plaintiff's final argument asserts the ALJ failed to address alleged inconsistencies in the medical opinion evidence of state agency consultant Walter Bell, M.D. (Docket No. 13 at 9–11). Specifically, Plaintiff takes issue with Dr. Bell's statements suggesting his opinions were contingent on Plaintiff having a left hip replacement, which Plaintiff ultimately received October 5, 2020. *Id.* at 10. Prior to knowing of Plaintiff's left hip replacement, Dr. Bell appears to have concluded Plaintiff was capable of standing/walking only two hours of an eight-hour day. *Id.* at 9 (citing R. 1014). Then, approximately three months post-left hip replacement, Dr. Bell assessed Plaintiff as being able to perform light work and stand/walk for six hours of an eight-hour day. (R. 112). Plaintiff argues "the ALJ and Dr. Bell should have explained how after surgery, the RFC suddenly found [Plaintiff] was capable of standing/walking six hours of an eight-hour day." (Docket No. 13 at 10).

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c, 416.920c(a). Instead, the ALJ must articulate how persuasive she finds each medical source's opinion by considering certain factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). These factors include: (i)

9

supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[1]

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

During a medical evaluation on October 20, 2020, Dr. Bell recorded "[l]ight RFC stand/walk 2/8 signed in eCAT to allow the claim. . . . However, please contact the claimant to ensure she has not had a Left hip replacement since the latest MER we have in file." (R. 1014). Then, on January 19, 2021, Dr. Bell's initial disability determination explanation concluded Plaintiff had the RFC to perform light work and could stand/walk six hours of an eight-hour day.

---

[1] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

(R. 102–31).  Dr. Bell noted Plaintiff was doing well post-operatively, in addition to addressing other evidence of record.  (R. 131).  On May 24, 2021, state agency consultant Edna Daniel, M.D. also found Plaintiff was capable of light work and standing/walking six hours of an eight-hour day, despite Plaintiff having been involved in a car wreck on January 21, 2021.  (R. 136–56).  The ALJ found both opinions to be persuasive.  (R. 24).

The Court disagrees with Plaintiff's assertion that Dr. Bell's October 20, 2020 note is inconsistent with his January 19, 2021 initial disability determination.  Plaintiff received her left hip replacement on October 5, 2020.  (R. 1054, 1074).  Dr. Bell's note of "[l]ight RFC stand/walk 2/8" was seemingly accompanied by the caveat of whether Plaintiff had received a left hip replacement.  (R. 1014).  Approximately three months later, Dr. Bell assessed Plaintiff's RFC, specifically commenting on Plaintiff's post-operative status following her left hip replacement.  (R. 102–31).  The Court interprets this not as a discrepancy, but as an evolution of assessment following the receipt of further medical information.  Regardless, "an ALJ's failure to *weigh* a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."  *Martinez v. Comm'r, SSA*, 777 F. App'x 930, 935 (10th Cir. 2019) (quoting *Mays*, 739 F.3d at 578–79).  Further, the ALJ's RFC determination is consistent with both state agency consultants' opinions, with the exception of additional limitations favorable to Plaintiff.  (R. 19).  Thus, the Court finds no error in the ALJ's evaluation of Dr. Bell's medical opinion.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 18th day of September, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT